Filed 3/28/24  P. v. Alvarez CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JUAN MANUAL ALVAREZ, Defendant and Appellant. | B322652 (Los Angeles County Super. Ct. No. BA277752) |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Reversed and remanded with directions.

Tracy J. Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————————

Juan Manual Alvarez, who was convicted of 11 counts of first degree murder in 2008, appeals from the trial court's order denying a petition for resentencing under Penal Code former section 1170.95 (now section 1172.6)[1] that he brought in October 2021.[2]  He contends the trial court erred in denying the petition at the prima facie stage because the record of his convictions does not demonstrate he is ineligible for relief under section 1172.6 as a matter of law.  He asserts that his murder convictions were based on an arson felony murder theory, and the trial court engaged in impermissible factfinding when it found he was the actual killer and therefore ineligible for relief under section 1172.6 as a matter of law.  We agree with Alvarez that the record

<hr/>

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

Undesignated statutory references are to the Penal Code.

[2] This is Alvarez's second petition under former section 1170.95.  He brought the first petition on July 16, 2019, and the trial court summarily denied it on August 9, 2019, without appointing counsel, allowing briefing, or holding a hearing.  Alvarez appealed that order, his counsel did not raise an issue in the opening brief, and we dismissed the appeal as abandoned because Alvarez did not file a supplemental brief (see *People v. Serrano* (2012) 211 Cal.App.4th 496; *People v. Delgadillo* (2022) 14 Cal.5th 216).  (*People v. Alvarez* (July 27, 2020, B301306) [nonpub. opn.].)  The trial court did not find the present second petition to be an impermissible successive petition (and the People have not argued that it is) because of developments in the law after the first petition was denied, namely the requirement that the court appoint counsel for a petitioner who files a facially sufficient petition under former section 1170.95, now section 1172.6.  (*People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).)

of his convictions does not establish as a matter of law that he was the "actual killer" within the meaning of the current felony murder statute (§ 189), or otherwise ineligible for relief as a matter of law. Accordingly, we reverse the order denying the petition and remand the matter for further proceedings under section 1172.6.

## BACKGROUND

### I. Brief Overview of the Circumstances of the Offenses

As context for the parties' arguments in this appeal, we provide the following brief account of the circumstances of the offenses, taken from this court's opinion in Alvarez's direct appeal of his convictions. (*People v. Alvarez* (Jan. 24, 2012, B210418) [nonpub. opn.].) Our resolution of the present appeal is not dependent upon this factual account, but rather upon the theories presented, jury instructions given, and verdicts returned at Alvarez's trial, which we summarize below.

On January 26, 2005, Alvarez poured gasoline over the hood, roof, and sides of his Jeep Cherokee Sport, drove the Jeep onto railroad tracks in Glendale, later exited the vehicle, and ran away from the tracks. A southbound Metrolink train struck Alvarez's Jeep, the cab car of the train derailed, and the Jeep became embedded underneath the derailed cab car. Sparks and frictional heat ignited vapors from the gasoline Alvarez poured onto the Jeep, and the resulting fire burned the Jeep and part of the cab car as they continued to move along the tracks. The wheels of the derailed cab car caught a switch, and the cab car rolled onto a siding where it crashed into a parked freight locomotive. The cab car and the next passenger car of the southbound Metrolink train jackknifed and smashed into passenger cars of a northbound Metrolink train, which also

3

derailed. Eleven passengers from the two Metrolink trains died from blunt force trauma (and 185 other passengers were injured). (*People v. Alvarez, supra*, B210418, pp. 2-3.)

## II. Trial and Direct Appeal

### A. Charges

An amended information charged Alvarez with 11 counts of murder (§ 187, subd. (a)), one count of arson (§ 451, subd. (d)), and one count of train wrecking (§ 219). As to each murder count, the amended information alleged the special circumstance that Alvarez committed the murders while engaged in the crime of train wrecking within the meaning of section 190.2, subdivision (a)(17). The amended information also alleged a multiple murder special circumstance. (§ 190.2, subd. (a)(3).)

The prosecution presented three theories of first degree murder to the jury: (1) a willful, deliberate, and premeditated killing with express malice aforethought; (2) an unlawful killing during the commission or attempted commission of arson (arson felony murder); and (3) an unlawful killing during the commission or attempted commission of train wrecking (train wrecking felony murder). Alvarez (in his trial testimony) and his counsel (during argument) told the jury that Alvarez's intent when he parked his vehicle on the train tracks was to commit suicide, but he changed his mind and was unable to remove his car from the tracks before he ran away from the vehicle to avoid the oncoming train.

### B. Argument to the Jury

The prosecutor argued to the jury that under the evidence presented, it could find Alvarez guilty beyond a reasonable doubt of first degree murder under any of the three theories specified above.

4

At the outset of the opening argument, the prosecutor informed the jury, "you do not need to find an intent to kill in this case to convict Mr. Alvarez of first degree murder." The prosecutor repeated that point throughout the argument. The prosecutor told the jury it could find Alvarez guilty of first degree felony murder if the victims died during the commission or attempted commission of arson or train wrecking, "whether [the victims] died intentionally, unintentionally or accidentally;" and "it does not matter what the actual cause of death is."

Defense counsel argued to the jury that Alvarez was not guilty of first degree murder because the evidence did not prove beyond a reasonable doubt that he intended to kill anyone, or intended to commit arson or train wrecking. Counsel further asserted, "This case has almost been exclusively from the Government's perspective about the arson, because the other two theories of first degree murder are just not viable" based on the evidence presented.

In rebuttal argument, the prosecutor again reviewed the three theories of first degree murder. Regarding the two theories of felony murder, the prosecutor told the jury, "This is obviously a much easier way to get to first degree murder. You don't have to sit there and say, you know, is there enough for first degree premeditated murder."

The prosecutor explained arson felony murder liability to the jury, using the following example: "[I]f I decide to burn my car . . . and in doing so I parked in the garage of a high-rise building, and in doing so I cause a fire, and the fire is coming up the building, and there's people that are working up there and they can't get out, and the only way out, because they don't want to burn to death because they know that's going to be a really bad

5

death, they choose to jump out that window and they fall to their death. [¶] I'm still responsible for that, even though they didn't burn. That's how this works. I can't say, well, I didn't know they were going to jump out of the building. I didn't know they were going to get hurt. [¶] You are responsible if you decide to set fire as in this case and other people die."

## C. Jury Instructions

The trial court instructed the jury on the three theories of first degree murder that the prosecution presented.[3] Using CALJIC No. 8.10, the court informed the jury:

"Defendant is accused in Counts 1 through 11 of having committed the crime of Murder, a violation of section 187 of the Penal Code.

"Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of Arson or Train Wrecking, is guilty of the crime of Murder in violation of section 187.

"In order to prove this crime, each of the following elements must be proved:

"1. A human being was killed;

"2. The killing was unlawful; and

"3. The killing was done with malice aforethought or occurred during the commission or attempted commission of Arson or Train Wrecking." The trial court next instructed the jury on the definition of malice (CALJIC No. 8.11) and willful, deliberate, and premedicated first degree murder (CALJIC No. 8.20).

---

[3] The trial court also instructed the jury on second degree murder. Alvarez was not convicted of that crime, and those instructions are not germane to his petition or this appeal.

6

Using CALJIC No. 8.21, the trial court instructed the jury as follows regarding felony murder:

"The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of Arson or Train Wrecking is Murder of the First Degree when the perpetrator had the specific intent to commit that crime.

"The specific intent to commit Arson or Train Wrecking and the commission or attempted commission of either crime must be proved beyond a reasonable doubt. There must also be a logical connection between the act causing the death and the Arson or Train Wrecking. This connection must involve more than just their occurrence at the same time and place."

The trial court also instructed the jury on the elements of arson with CALJIC No. 14.83: "1. The defendant set fire to or burned or caused to be burned his own personal property; [¶] 2. The fire was set or the burning was done willfully and maliciously; and [¶] 3. The fire or burning resulted in injury to another person's property."

Using CALJIC No. 9.97, the trial court set forth the elements of train wrecking as follows: "1. A person threw out a switch, removed a rail, or placed any obstruction on any railroad; [¶] 2. The person had the specific intent to derail any passenger, freight or other train, car or engine; and [¶] 3. Caused derailment of the passenger, freight, or other train, car or engine."

Regarding the train wrecking special circumstance allegation, the trial court instructed the jury as follows with CALJIC No. 8.81.17:

7

"To find that the special circumstance referred to in these instructions as murder in the commission of Train Wrecking is true, it must be proved:

"1. The murder was committed while the defendant was engaged in the commission or attempted commission of a Train Wrecking; and

"2. Any person suffered death as a result, meaning that an illegal act was a cause of the death. A legal cause of the death is an act that sets in motion a chain of events that produces the death as a direct, natural and probable consequence of the act and without which the death would not occur."

### D.     Verdicts and Sentence

The jury found Alvarez guilty of 11 counts of first degree murder and one count of arson, and *not guilty* of train wrecking. As to each of the murder counts, the jury found *not true* the special circumstance allegation that Alvarez committed the murders while engaged in the crime of train wrecking. The jury found the multiple murder special circumstance to be true.

After a penalty phase trial, the trial court sentenced Alvarez to 11 consecutive terms of life in prison without the possibility of parole (in accordance with the jury's verdicts), and imposed and stayed a two-year middle term for the arson.

### E.     Direct Appeal

Alvarez appealed from the judgment of his convictions, and we affirmed the judgment. (*People v. Alvarez*, *supra*, B210418, pp. 2, 21.) We noted in the opinion, Alvarez "concedes that 'the record supports that the jury convicted [him] of first degree murder based on arson felony murder,' aptly given the jury convicted him of arson." (*Id.* at p. 15.) We rejected his claims of instructional and evidentiary error, including his contentions (1)

8

that the trial court erred in refusing his request to instruct the jury on causation and (2) that "the evidence was insufficient to support his murder convictions because there was no logical connection between the arson and the deaths and because he lacked the specific intent to commit arson." (*Id*. at pp. 10, 14.) We stated in the opinion, "Because [Alvarez] was the actual killer, no logical nexus [between the felony and the deaths] is required. Instead, the killings and arson just need to be parts of one continuous transaction." (*Id*. at p. 12.) Our passing reference to Alvarez as the "actual killer" in our opinion in his direct appeal predates the inclusion of this term in the felony murder statute (§ 189) and, accordingly, predates case law defining that term for purposes of section 189, subdivision (e)(1).

### III.   The Present Petition for Resentencing

In 2018, the Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).) Senate Bill No. 1437 amended sections 188 (defining malice) and 189 (felony murder) and added section 1170.95, now renumbered section 1172.6, which established a procedure for vacating murder convictions and resentencing defendants who could no longer be convicted of murder in light of the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)

9

Section 189, subdivision (e), added by Senate Bill No. 1437, states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery and burglary] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

On October 12, 2021, Alvarez, as a self-represented litigant, filed a petition for writ of habeas corpus and/or petition for resentencing under former section 1170.95, now section 1172.6.[4] He used a preprinted form for a petition for writ of habeas corpus.  He alleged in the petition that he was convicted of first degree murder under a theory of felony murder (or the natural and probable consequences doctrine), and he could not now be convicted of that crime because of changes to sections 188 and 189, effective January 1, 2019.  He argued the evidence presented at trial was insufficient to show he acted with reckless indifference to human life within the meaning of *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, and the court should conduct an evidentiary hearing under section 1172.6, subdivision (d).  He requested appointment of counsel.

---

[4] For the remainder of this opinion, we refer to the statute by its current designation, section 1172.6.

10

On October 25, 2021, the trial court issued a minute order, summarily denying Alvarez's petition for writ of habeas corpus, concluding *Banks* and *Clark* are inapplicable because "the jury found, as did the Court of Appeal in affirming petitioner's convictions on January 24, 2012 (case B210418), that petitioner was the actual and sole killer in these multiple murders." Regarding the section 1172.6 petition for resentencing, the court appointed counsel for Alvarez and ordered the district attorney to file a response to the petition.

In its response, the district attorney argued Alvarez is ineligible for relief under section 1172.6 as a matter of law because he "was the sole participant in the crime and the actual killer." The district attorney added, "As such, Petitioner 'could' and would be found guilty of murder under the law made effective January 1, 2019." The district attorney attached to the response this court's opinion in Alvarez's direct appeal of his convictions and noted that "on more than one occasion" that opinion refers to Alvarez as the "actual killer."

Alvarez, through appointed counsel, filed a reply brief. He argued he is not ineligible for relief under section 1172.6 as a matter of law because the record of his convictions does not demonstrate as a matter of law that he was the actual killer. The jury did not make an express finding that he was the actual killer, and he asserted that such a finding was not required for a guilty verdict under the arson felony murder theory. Applying the jury instructions on felony murder, "The jury merely found that there was a logical connection between the deaths and the arson." Alvarez pointed out that the cause of the victims' deaths was blunt force trauma from the train wreck, but the jury found him not guilty of train wrecking and found the train wrecking

11

special circumstance allegation to be not true. He maintained that he does not qualify as an "actual killer" within the meaning of section 189, subdivision (e)(1), added by Senate Bill No. 1437; and the references to him as the "actual killer" in this court's opinion in his direct appeal were made before the Legislature enacted Senate Bill No. 1437 and case law defined the term "actual killer" for purposes of section 189, subdivision (e)(1). He argued that any finding at the prima facie stage of the proceedings that he was the actual killer would constitute impermissible fact finding, and the trial court was required to issue an order to show cause on the petition.

Alvarez attached to the reply brief the jury instructions and verdicts from his trial. He also attached then-recent case law, *People v. Lopez* (2022) 78 Cal.App.5th 1, 4 (*Lopez*), which defines the term "actual killer" for purposes of section 189, subdivision (e)(1) as "someone who personally killed the victim and is not necessarily the same as a person who 'caused' the victim's death."

On July 14, 2022, the trial court held a prima facie hearing under section 1172.6, subdivision (c). Consistent with the written response to the petition, the deputy district attorney argued that Alvarez was ineligible for relief under section 1172.6 as a matter of law because he was "the only one involved in this case. He was the actual killer." Defense counsel argued that the issue of whether Alvarez was the actual killer cannot be resolved at the prima facie stage because it requires fact finding on issues of causation.

The trial court disagreed with defense counsel and concluded that the record of convictions establishes Alvarez is ineligible for relief under section 1172.6 as a matter of law. Citing *People v. Harden* (2022) 81 Cal.App.5th 45 (*Harden*),

which we discuss below, the trial court concluded the jury instructions given at Alvarez's trial demonstrate the jury necessarily found that Alvarez was the actual killer. Specifically, the court referenced CALJIC No. 8.10, which, as quoted above, begins with the language, "*Every person who unlawfully kills* a human being with malice aforethought or during the commission or attempted commission of Arson or Train Wrecking, is guilty of the crime of Murder in violation of section 187." (Emphasis added.) The court quoted a passage from *Harden*, stating, " 'This language on its face tells the jury that "the person who unlawfully kills" is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury.' " (*Harden*, at p. 55.) The court noted that in *Lopez*, *supra*, 78 Cal.App.5th at page 17, the case relied upon by Alvarez, the trial court gave the jury CALCRIM instructions, which did not include the "every person who kills" language in the murder instruction, but rather stated the defendant "committed an act that caused the death of another person" (CALCRIM No. 520). The court also noted that at Alvarez's trial, the felony murder instruction (CALJIC No. 8.21) began with the language, "The *unlawful killing* of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of Arson or Train Wrecking is Murder of the First Degree when the perpetrator had the specific intent to commit that crime." (Emphasis added.) But in *Lopez*, the felony murder instruction (CALCRIM No. 540A) stated, "While committing [the felony] the defendant caused the death of another person." (*Lopez*, at p. 16.) In denying Alvarez's section 1172.6 petition, the trial court concluded that under the CALJIC instructions, the jury necessarily found Alvarez was the actual

13

killer in finding him guilty of first degree murder.  As explained below, we disagree with this conclusion.

## DISCUSSION

### I.  Legal Principles Regarding Petitions for Resentencing Under Section 1172.6

When a defendant files a facially sufficient petition under section 1172.6, the trial court must appoint counsel to represent the petitioner, allow briefing from both sides, and hold a hearing to determine whether the petitioner has made a prima facie showing for relief.  (§ 1172.6, subds. (b)-(c).)  As our Supreme Court explained:  "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

If the trial court issues an order to show cause, the final step in the process (unless the parties stipulate to resentencing) is a hearing to determine if the petitioner is entitled to relief, where the trial court must vacate the petitioner's murder

14

convictions and resentence him or her on any remaining counts unless the prosecution can "prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

"Whether the court conducted a proper inquiry under section [1172.6], subdivision (c)" at the prima facie stage—the issue before us—"is a question of statutory interpretation, which we review de novo." (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437; *Harden, supra,* 81 Cal.App.5th at p. 52 ["We independently review a trial court's determination on whether a petitioner has made a prima facie showing"].)

## II. The Record of Alvarez's Convictions Does Not Establish as a Matter of Law That He Was the "Actual Killer" Within the Meaning of Section 189, Subdivision (e)

It is undisputed here that Alvarez filed a facially sufficient petition under section 1172.6, subdivision (b). The question is whether he made a prima facie showing he is entitled to relief under section 1172.6, subdivision (c).

After the enactment of the amendments in Senate Bill No. 1437, to be liable for felony murder, "one of the following [must be] proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) The parties agree, as do we,

that Alvarez made a prima facie showing on his section 1172.6 petition *unless* the record of his convictions establishes as a matter of law that he was the actual killer. Section 189, subdivision (e)(2) does not apply in this case because Alvarez was not prosecuted as an aider and abettor; rather he was the sole participant in the charged offenses. And a finding that he acted with reckless indifference to human life within the meaning of subdivision (e)(3) cannot be resolved at the prima facie stage on the record before us without resort to impermissible factfinding. Finally, the record of Alvarez's convictions does not establish as a matter of law that he was convicted of the first degree murders based on a theory that he acted with malice aforethought. (§ 188, subd. (a)(3).)

For purposes of section 189, subdivision (e)(1), "actual killer" means "someone who personally killed the victim and is not necessarily the same as a person who 'caused' the victim's death." (*Lopez*, *supra*, 78 Cal.App.5th at p. 4.) Personally inflicting harm and proximately causing harm " 'are two different things.' " (*Id*. at p. 17.) "The Legislature was aware of that difference when it chose to use the term actual killer in enacting Senate Bill No. 1437 to add section 189[, subdivision ](e)." (*Id*. at p. 18.)

In the context of accomplice liability, a person who hands the murder weapon to another is not the actual killer. (*Lopez*, *supra*, 78 Cal.App.5th at p. 18.) " 'The actual killer is the person who personally kills the victim, whether by shooting, stabbing, or . . . taping his mouth closed, resulting in death by asphyxiation.' " (*Ibid*., quoting *People v. Garcia* (2020) 46 Cal.App.5th 123, 152.) It does not follow that a defendant is necessarily the actual killer simply because he or she was the sole participant in a felony that

16

resulted in death. "If mere participation in a qualifying felony that results in death were sufficient to qualify one as the 'actual killer,' the language in section 189, subdivision (e)(1) would be superfluous." (*People v. Vang* (2022) 82 Cal.App.5th 64, 88, fn. omitted, (*Vang*).) Thus, the term "actual killer" as used in section 189, subdivision (e)(1) does not apply *only* in cases involving accomplice liability, as the Attorney General suggests. (*Id.* at pp. 84, 87 [rejecting the Attorney General's argument "that Senate Bill [No.] 1437 was focused solely on accomplice liability for felony murder and that the Legislature used the term 'actual killer' merely to distinguish between a perpetrator and an ordinary aider and abettor in cases involving multiple actors"].)

For example, in *Vang*, *supra*, 82 Cal.App.5th at page 70, the Court of Appeal reversed the defendant's conviction for first degree felony murder and vacated the felony murder special circumstance finding in the defendant's direct appeal, concluding the conviction and true finding "rest[ed] on an invalid legal theory." The appellate court briefly summarized the facts of the case as follows: "In short, defendant, who has a long history of domestic violence, had an argument with his wife. After she fled in her car, defendant followed, eventually forced her to stop, and coerced her (through force or fear) into his vehicle. As defendant was driving away, his wife opened the door and jumped from the moving vehicle, resulting in her death." (*Id.* at p. 69.) The Court of Appeal affirmed the defendant's conviction for kidnapping but agreed with the defendant that the prosecution had "proceed[ed] on a legally inadequate theory" of felony murder—that the defendant was the actual killer—because "the evidence showed that [the victim] jumped from the truck on her own volition, and there was no evidence that defendant directly caused [the

17

victim's] death." (*Id*. at p. 80.) We note that in the present case, the prosecutor presented a similar example to Alvarez's jury to illustrate felony murder liability (as quoted in full above)—people jumping out of a building to their deaths on their own volition to avoid a car fire set in a parking garage below.

In defining the term "actual killer," as used in section 189, subdivision (e)(1), the *Vang* court explained: "In light of Senate Bill No. 1437's intent to impose punishment commensurate with the person's culpability, we conclude that the term 'actual killer' was intended to limit liability for felony murder—in cases where section 189, subdivision (e)(2) or (e)(3) do not apply—to the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act. In other words, the intent was to conform California law to the 'agency theory' of felony murder liability, under which criminal culpability is restricted to deaths directly caused by the defendant or an accomplice, as distinguished from the 'proximate cause' theory of felony murder, under which a defendant is responsible for any death that proximately results from the unlawful activity." (*Vang*, *supra*, 82 Cal.App.5th at p. 88.)

As the Attorney General acknowledges, the "key question in determining whether the trial court properly denied [the section 1172.6] petition is whether it was *possible* for a juror" to have found Alvarez guilty of felony murder "without also finding [he] personally killed the victim." (*Harden*, *supra*, 81 Cal.App.5th at p. 54.) We conclude the answer to that query is yes, and any conclusion here that Alvarez was the actual killer would rest on impermissible fact finding at the prima facie stage.

The jury made no express finding that Alvarez was the actual killer—that he personally killed the victims. Under the

18

jury instructions given at Alvarez's trial, to find Alvarez guilty of felony murder, the jury had to find, in pertinent part: (1) a human being was killed (CALJIC No. 8.10); (2) the killing was unlawful, whether intentional, unintentional, or accidental (CALJIC Nos. 8.10 & 8.21); (3) the killing was done during the commission or attempted commission of arson (CALJIC No. 8.10); (4) Alvarez had the requisite intent to commit arson (CALJIC No. 8.21); and (5) there was a logical connection between the act causing death and the arson (CALJIC No. 8.21). Under these instructions, the jury was not required to find Alvarez personally killed the victims before the jury could find him guilty of felony murder. Rather, the jury had to find Alvarez committed arson (or attempted arson) and there was a logical connection between the arson and the deaths. It is undisputed that the victims died as a result of blunt force trauma from the train collisions and not as a result of injuries from the fire. The jury found Alvarez not guilty of train wrecking, a crime that would have required the jury to find (1) Alvarez placed an obstruction on the railroad; (2) Alvarez "had the specific intent to derail any passenger, freight or other train, car or engine"; and (3) he "[c]aused derailment of the passenger, freight, or other train, car or engine."

We disagree with the Attorney General's position and the trial court's conclusion that there is language in CALJIC Nos. 8.10 and 8.21 indicating the jury had to find Alvarez personally killed the victims in order to find him guilty of felony murder. Before setting forth the elements of murder, which we outlined immediately above, CALJIC No. 8.10, as given to Alvarez's jury, includes the following introductory sentence: "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of Arson or

19

Train Wrecking, is guilty of the crime of Murder in violation of Penal Code section 187." (See also CALJIC No. 8.21 ["The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission or attempted commission of the crime of Arson or Train Wrecking is Murder of the First Degree when the perpetrator had the specific intent to commit that crime"].) We do not read "unlawfully kills" to necessarily mean "personally kills." Under the elements of felony murder at the time of Alvarez's trial, he unlawfully killed the victims, i.e., he committed felony murder. It was not material then whether he personally killed the victims or set in motion a chain of events that resulted in the victims' deaths.

We recognize that in *Harden*, *supra*, 81 Cal.App.5th at pages 54-55, the case relied upon by the trial court, the Court of Appeal concluded that the " 'every person who unlawfully *kills*' " language in CALJIC No. 8.10 " 'on its face tells the jury that "the person who unlawfully kills" is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury.' [Citation.] The jury was instructed on no alternative definition of murder. Thus, Harden's murder conviction necessarily means the jury determined she actually killed [the victim]." *Harden* is distinguishable because, there, in denying the defendant's petition for resentencing at the prima facie stage, the appellate court also relied on other factors not present here: (1) that the jury made an express finding that the defendant personally inflicted great bodily injury on the victim, who died by strangulation during the course of a robbery committed solely by the defendant; and (2) that the jury found a felony murder special circumstance to be true, after being

20

instructed with CALJIC No. 8.80.1, which stated in pertinent part: " 'If you are satisfied beyond a reasonable doubt that *the defendant actually killed* a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true.' " (*Id*. at pp. 48, 54, 59.)

The other cases the Attorney General relies on are similarly distinguishable in that it was undisputed there that the defendants personally and directly applied force to the victims. In *People v. Garcia* (2022) 82 Cal.App.5th 956, 959, the Court of Appeal affirmed the trial court's order denying a petition for resentencing after an evidentiary hearing, where the defendant was convicted of robbery and first degree murder after he "physically assaulted and stole money from an 82-year-old man, who died about an hour later from lethal cardiac arrhythmia." The appellate court concluded "the defendant personally committed the act(s) that directly resulted in the victim's death." (*Id*. at p. 971.) In *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1196, a defendant who was fleeing after a robbery hit a man with his car after the man tried to stop him, knocking the man onto the hood of the car. The man fell off the car, hit his head on the pavement, and died. The jury convicted the defendant of burglary, robbery, and first degree murder, and found true the special allegation that the defendant personally used a deadly and dangerous weapon (a car) in the commission of the murder. (*Ibid*.) The Court of Appeal affirmed the trial court's order denying the petition for resentencing at the prima facie stage, concluding the defendant was the actual killer in that he directly hit the victim with the car. (*Id*. at pp. 1198, 1202.)

On the record before us, to determine Alvarez was the actual killer, we would have to examine the evidence and make

21

factual findings regarding causation. In other words, "to conclude [he] is ineligible for relief as a matter of law, we would have to weigh the evidence and find [him] to have been the actual killer, which would be impermissible at this stage." (*Lopez*, *supra*, 78 Cal.App.5th at p. 20.) Alvarez filed a facially sufficient petition, setting forth a prima facie showing that he entitled to relief. There is nothing in the record of convictions establishing as a matter of law that he is ineligible for resentencing. Accordingly, we reverse the trial court's order denying the petition and remand the matter for further proceedings under section 1172.6, including the issuance of an order to show cause under subdivision (c). We conclude here only that the petition may not be resolved at the prima facie stage based on the record of Alvarez's convictions.

## DISPOSITION

The July 14, 2022 order denying the petition for resentencing is reversed and the matter is remanded for further proceedings under Penal Code section 1172.6, including the issuance of an order to show cause under subdivision (c).

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.          BENDIX, J.

22